UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――

GATEWAYS ORGANIZATION, INC.,

**Case No.:**

Plaintiff,

-against-

SHULAMIT PRAGER,                                    **COMPLAINT**

Defendant.

―――――――――――――――――――――――――――――

Plaintiff Gateways Organization, Inc. ("Gateways"), by and through its attorneys, Hinckley, Allen & Snyder LLP, as and for its Complaint against Defendant Shulamit Prager ("Prager"), alleges as follows:

## PRELIMINARY STATEMENT

1.      On or about July 20, 2017, Gateways and Prager entered into a promissory note (the "Prager Note"), pursuant to which Prager agreed to pay, among other things, not less than $64,000 per month and any unpaid principal up to a total principal amount of $7,372,000.  Prager has breached the Prager Note by, among other things, failing and refusing to make the required monthly payments to Gateways.  Gateways therefore brings this action for breach of contract and for all attendant damages.

## PARTIES

2.      Gateways Organization, Inc. is a New York not-for-profit corporation with its principal offices at 11 Wallenberg Circle, Monsey, New York.

3.      Gateways is a 501(c)(3) public charity that was formed in 1997, and has been carrying out its charitable mission for approximately 20 years.

4.      Upon information and belief, Shulamit Prager resides at 7 Oliver Court, Lakewood, New Jersey.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6.      This Court has personal jurisdiction over the Defendant because she participated in negotiations over the Prager Note in New York, and her contacts with New York are sufficient such that exercising jurisdiction over them would not offend traditional notions of fair play and substantial justice.

7.      In addition, the parties to the Prager Note expressly agreed that the state and federal courts of the State of New York shall have exclusive jurisdiction over any dispute arising in connection with the Prager Note or related to or arising out of the transactions contemplated thereby.

8.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because this is a district in which a substantial part of the events or omissions giving rise to the claims occurred, in which Defendant is subject to the Court's personal jurisdiction, and to which the parties to the Prager Note waived any venue objection.

## FACTUAL ALLEGATIONS

9.      Following several months of negotiations in which all parties were represented by counsel, on or about July 20, 2017, Prager, Gateways, non-party Gateways Organization Holding

Company, Inc., and non-party The Brownstone Experience Foundation (collectively, the "Borrowers") executed a promissory note in favor of non-party Sterling National Bank ("Sterling") in the principal amount of $14,980,000 (the "Sterling Note"), in connection with a loan provided by Sterling to Gateways in that amount (the "Sterling Loan").

10.     The Sterling Note requires the Borrowers to make monthly payments to Sterling of $73,302.83.

11.     Also on July 20, 2017, Gateways, as mortgagor, entered into a Mortgage and Security Agreement with Sterling, as mortgagee, as security for the Sterling Loan (the "Mortgage").

12.     In order to induce Gateways to enter into the Sterling Loan, the Sterling Note, and the Mortgage, Prager promised to pay Gateways not less than $64,000 per month pursuant to the Prager Note.

13.     Prager agreed to enter into the Prager Note in order to, among other things, induce Gateways to enter into the Sterling Loan, the Sterling Note and the Mortgage.

14.     Gateways entered into the Sterling Loan, the Sterling Note, and the Mortgage in reliance on the Prager Note.

15.     Gateways would not have entered into the Sterling Loan, the Sterling Note, or the Mortgage in the absence of the Prager Note.

16.     Gateways incurred significant expenses in connection with the Sterling Loan that would not have been incurred absent the assurances of Prager as documented in the Prager Note.

17.     The Prager Note provides that $6,400,000 would initially be available to be disbursed to Prager in accordance with the terms of the Prager Note.

18.    The Prager Note provides that the principal amount thereof would be retained by Gateways and would only be disbursed to Prager in accordance with the terms therein.

19.    The Prager Note provides that disbursement of any amount of principal to Prager is subject to Gateways' sole and absolute reasonable discretion and Gateways reserves the right to accept or decline any request for a disbursement thereunder.

20.    The Prager Note provides that Gateways may condition the availability of disbursements of principal to Prager on the satisfaction of, among other things, the conditions set forth in the Prager Note

21.    Specifically, prior to any disbursement of principal, Prager is required to close on the acquisition of one or more commercial real estate properties from unrelated third parties ("New Property").

22.    The acquisition of the New Property and the disbursement of any principal is expressly contingent upon Gateways' satisfactory review, in Gateways' sole and absolute reasonable discretion, of property due diligence, purchase documentation, and mortgage and security interest documentation relating to the New Property.

23.    In addition, prior to any disbursement of principal, Prager is required provide Gateways with a first priority security interest in all of the direct and indirect equity interests in 35 Tech Partners, LLC, and to execute and deliver an equity pledge reflecting same.

24.    Prager represented to Gateways that she is the sole member of each limited liability company that is a member of 35 Tech Partners, LLC.

25.    As of the date of the Prager Note, Prager is obligated to pay Gateways $64,000 per month regardless of the amount actually disbursed to Prager by Gateways.

26.     The Prager Note expressly acknowledges that Prager promised to pay the monthly amount to ensure that Gateways has cash flow sufficient to satisfy all or a signification portion of its obligations on the Sterling Note.

27.     The Prager Note also requires Prager to reimburse Gateways $128,000 for out-of-pocket expenses incurred by Gateways in connection with the Sterling Loan and the Prager Note.

28.     Prager did not reimburse the $128,000, but requested that Gateways treat this as an advance under the Prager Note.

29.     Prager was not entitled to receive any of the Sterling Loan proceeds from Sterling upon the closing of the Sterling Loan.

30.     Prager executed documents in connection with the closing of the Sterling Loan, which reflected that Gateways would receive the full amount of the Sterling Loan proceeds.

31.     Prager was represented by independent counsel in connection with the closing of the Sterling Loan and the execution of the Prager Note.

32.     The Prager Note expressly contemplates that disbursements of the Sterling Loan proceeds are to be made to Prager upon the satisfaction of certain conditions, in Gateways' sole discretion, and that Prager is obligated to make payments to Gateways prior to the disbursement of any proceeds to ensure that Gateways had the funds to pay the Sterling Loan.

33.     The Prager Note defines an "Event of Default" to include the failure to pay the proper amount when due with no cure period, or the non-performance of other provisions of the Prager Note, which generally have a 30-day cure period.

34.     Upon the occurrence of an Event of Default, Gateways is entitled to declare immediately due and payable any and all of the obligations under the Prager Note.

35.     Gateways is entitled to recover all costs, expenses and attorneys' fees incurred in connection with Prager's breach of the representations and warranties made in the Prager Note, in enforcing Gateways' rights under the Prager Note, or in any action to collect under the Prager Note.

36.     Gateways has duly performed its obligations under the Prager Note.

37.     On or about August 4, 2017, Gateways disbursed the principal sum of $200,000 to Prager under the Prager Note based on assurances from Prager that the conditions of the Prager Note were easily satisfied and Gateways could expect Prager to satisfy the conditions precedent to a disbursement within several days.

38.     Prager has not repaid this disbursement to Gateways.

39.     Prager has wrongfully repudiated the Prager Note and made no payments to Gateways.

40.     Specifically, Prager failed to make payments due to Gateways on July 25, 2017 of $84,467, and on August 25, 2017, September 25, 2017, and October 25, 2017 of $64,000 each.

41.     In addition, Prager failed to acquire a New Property.

42.     Prager also made a number of false and/or misleading representations in the Prager Note to induce Gateways to enter into the Prager Note and the Sterling Loan.

43.     For example,

     a.   Section 3(a) of the Prager Note provides that the Financial Statements delivered by Prager to Gateways are correct and complete, whereas upon information and belief, the Financial Statements omit various liabilities and over-state the value of various assets.

     b.   Sections 3(c), 3(e) and 3(o)(iii) of the Prager Note provide that there are no liens or encumbrances on the tangible or intangible property, particularly of 35 Tech and each

Member thereof, whereas upon information and belief, there were liens and encumbrances on such property.

c. Section 3(l) of the Prager Note provides that all due diligence materials provided by Prager were true, accurate and complete, whereas upon information and belief, such due diligence materials contained information that was misleading, inaccurate and/or incomplete.

d. Section 3(m) of the Prager Note provides that Prager was not under any commitment with respect to a broker with respect to this transaction, whereas at the Sterling Loan closing, Prager demanded that Gateways satisfy the claim of a purported broker who Prager had promised would be paid.

e. Section 3(q) of the Prager Note provides that the representations of Prager do not contain any untrue statement of material fact or material omission, whereas several of the representations did contain untrue statements of material fact or material omissions.

44. On October 26, 2017, Gateways gave Prager notice of default and demanded the payment of all amounts due and owing under the Prager Note.

45. As of the date of this Complaint, Prager has not cured its defaults.

46. On or about November 2, 2017, Prager expressly disclaimed default, rejected Gateways' demand for payment, and repudiated any further obligations under the Prager Note.

## COUNT ONE: BREACH OF CONTRACT

47. Gateways incorporates paragraphs 1-46 as if set forth fully herein.

48. The Prager Note is a valid and binding contract.

49. Gateways has performed its obligations under the Prager Note.

50. Prager has failed to perform its obligations under the Prager Note and made false and/or misleading representations in the Prager Note.

51.     Such conduct constitutes a breach of the Prager Note.

52.     Prager's breach of the Prager Note has damaged Gateways in an amount to be proven at trial, but believed to be in excess of $663,648.

53.     Therefore, Gateways is entitled to damages incurred as a result of this breach, including all damages available under the express terms of the Prager Note.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gateways Organization, Inc. respectfully demands judgment in this action as follows:

A. As to Count I, awarding judgment for Plaintiff and against Defendant for the damages resulting from Defendant's breach of contract in an amount to be proven at trial, including all damages available under the express terms of the Prager Note;

B. Awarding attorneys' fees, costs, and disbursements; and

C. Awarding such further relief as the Court deems just and proper.


DATED:          November 13, 2017
                New York, New York                HINCKLEY, ALLEN & SNYDER LLP

                                    By:     /s/ Christopher V. Fenlon

                                            Christopher V. Fenlon (CF6305)
                                            *Attorneys for Plaintiff*
                                            *Gateways Organization, Inc.*
                                            14 Wall Street, Suite 5G
                                            New York, New York 10005-2137
                                            P: (212) 313-4500
                                            F: (212) 313-4501
                                            E: cfenlon@hinckleyallen.com

8